Judge Pryor, Judge Kidd, and I are happy to welcome you to the second day of our panel sitting in Atlanta. You're familiar, I hope, with our lighting system. If not, when the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, just keep on going. You'll be on our time and not yours. And with that, we're ready for our first case. It is number 24-13498, United States v. Victor Uriel Diego Estrada. Mr. Dotson. Good morning. I'm Jonathan Dotson. I'm representing Victor Diego Estrada, and may it please the Court. The district court applied a too-low standard of proof to its finding at sentencing that the defendant possessed a firearm. And the legal conclusion in the footnote in the PSR doesn't change that standard of proof or otherwise alter the court's reasoning. Therefore, this court can only affirm both the enhancement and the denial of the 4C11 reduction if, well, it can only affirm the enhancement, that is, if the application note does away with the need to find possession and if that note is binding. I intend to begin, therefore, with the PSR footnote addressing that, then the court's ruling at sentencing, then the application note, and finally the 4C11 reduction. The purpose of a statement of reasons, here the one that adopted the PSR without change, is to memorialize the findings that the court has already made at sentencing. Here the court checked the box that adopted 71 paragraphs of the PSR, including the footnote that the government has raised in its answer brief. And that's a footnote to the assertion in the PSR that the defendant has zero criminal history points. And it says in one sentence that he doesn't qualify for the 4C11 reduction because he possessed a firearm. The government says that's a finding of fact that enables this court to affirm on a right for the wrong reasons theory and makes the application note issue moot in this case. It is our position that that is a legal conclusion, generally consistent with the court's ultimate ruling, overruling the objection, but not altering the court's analysis. And we have to look at what the court said at sentencing to determine whether that ruling was sufficient to affirm. Well, it depends what you mean by possessed, right? Sometimes a determination about possession is purely factual. You held the gun in your hand is a purely factual determination irrespective of the governing legal standard. On the other hand, as you, I think, are going to argue, if you're talking about a different type of possession, then that starts shifting off into a more quasi-legal or mixed question. I agree with that. And, of course, even the pure factual finding is by a preponderance of the evidence at sentencing. But I would distinguish cases where, for example, in Karras-Keough, that was about the connection, but it's analogous here, where the court applied the not clearly improbable standard and this court found that wasn't sufficient to rule on the 4C11, but it nonetheless affirmed because there was a separate factual finding in the context of reciting the facts where the court said those two things are definitely connected. Here, there's no factual analysis in the PSR that the court has adopted. It's not in the relevant conduct section. There's no discussion of constructive possession or the words of 4C11. It is just meant to memorialize what the court already found, not to make an independent factual finding. I think that wouldn't be a realistic interpretation of what the court was doing when it checked that box. Well, what did the district court say at sentencing? Put aside for a moment the statement of reasons. So, at sentencing, it said two sentences, and the sentence that's most important to my argument is the second one, and it said that it is not clearly improbable that the defendant possessed the firearm. That's not the correct standard of proof, and this court has held that's a lower standard of proof than the preponderance standard that's required. Therefore, it doesn't necessarily encompass a finding that the defendant possessed the firearm by a preponderance, and on this record, it's not at all clear that the court would have found that if it understood that the normal preponderance standard applies to that issue. You think the district court didn't understand that preponderance was the governing standard? I read that excerpt to mean that the court, using the application note, had done the sort of burden shifting that the note calls for. In other words, if the firearm is present in certain circumstances, if the firearm is present, then you've got to show that it's improbable, that it didn't belong to you or wasn't tied to you. And the way I read that is that you have to show that the connection between the firearm and the other offense is not clearly improbable, and where I think the court went wrong here is applying that to possession itself, which, unless the application note does away with it, is still a prerequisite before we get to whether there's a connection between the firearm and another offense. So, as this Court said in Carrasquillo, that lower standard doesn't mean that there's a preponderance, and that means that the court erred on both issues. There is not the preponderance finding to support its ruling either on the enhancement or the 4C11 reduction, unless the application note permissibly does away with that possession prerequisite. And, of course, the rule in this circuit is that an application note is only binding to the extent that it resolves a part of the guideline that remains ambiguous, even after we look at all the tools of construction. Here, I've cited dictionary definitions and case law. One of the most familiar and longstanding rules in criminal law is the definition of possession and constructive possession. So, it's my position there's no work left for the application note to do in terms of defining possession. That's been fully fleshed out by the case law. It's analogous to the James case where this Court found that the former application note to the 2K21 in connection with enhancement was not binding, and this Court there said we're relying on the plain meaning of in connection with and the precedent. Well, those are the same sources I'm arguing here. The plain meaning of possession and the copious case law defining possession and applying it. All right. So, let's talk about the evidence facts that were not disputed, the historical facts. So, the gun was found at a home that Mr. Estrada and others had rented or leased, right? Correct. Okay. Was there any evidence that Mr. Estrada ever resided or lived at that residence? No. There were two separate investigations that led to him, and there was never any surveillance putting him in that residence. And in fact, he was arrested in another residence where they found his passport in personal effects, the Hightower House. Okay. When the gun was found, other individuals were at the residence and were arrested, right? It's my understanding there was no one else at that residence when the gun was found, that it was just laying out on an air mattress and not put away, which is, I think, another fact that suggested maybe not it was him who put it there. Maybe I just misread something. Okay. The gun was registered to another individual, right? Yes, Courtney Blackburn, and not reported stolen. Okay. Was there any evidence or testimony regarding who that individual was? No. Her name just appeared the one time on the record, and that was never explained. And I think this all illustrates that it's a very weak inference to say, especially because he was arrested three days before, that he possessed the gun, that the greater weight of the evidence was that he possessed the gun. I can understand the court saying it's not clearly improbable. But without knowing his role in the offense, his relationship to that house, other than negotiating the lease, the roles of other people in the offense, this isn't one of those conspiracies where the indictment or the PSR really spelled that out. It's not within the realm of reasonable conclusions that the defendant more likely than not possessed that firearm. But more to the point, the court didn't make that conclusion. And this court has reversed, for example, in Garcia, which is cited in Carrasquillo, where even when there were some evidence that might have supported that conclusion, it didn't read that finding into it. So it's not that this court can make the finding itself based on the evidence. We still need the finding. And in this case, the evidence is pretty weak. And in terms of the finding that you would be looking for, that we should be looking for, in your view, if your client is going to be held responsible, I guess, under the theory that a co-conspirator possessed the firearm, the district court needs to make that specific finding as to the foreseeability and so forth, and did not do so in this case. I agree that it should at very least say the co-conspirator possessed it. And really, best practice should elaborate on why that's part of the jointly undertaken criminal activity, which is something, again, we can't conclude here, given not really knowing the role that the defendant played with respect to this house, other than negotiating the lease. When was the residence, according to information, the unobjected to information, the pre-sentence investigation report, or any evidence produced by the government or included in the proffer? Were narcotics sold from the residence where the gun was found? We, the record doesn't speak to, so there's one controlled buy on the record, and it doesn't speak to where that came from. The government did note that there was writing on bags in that house that matched the writing on the drugs sold in the controlled buy. But we don't know that that was the defendant's writing, and we still don't know that that defendant got it from that house as opposed to the house he was found in, which also had methamphetamine. And I'll reserve the rest of my time. All right, thank you very much. Mr. Walker. Good morning, Your Honors, and may it please the Court, Stuart Walker for the United States. Facts are stubborn things, and so are findings of facts. But once a finding of fact has been made, the reviewing court is duty-bound to examine the record to see if the evidence supports it. And if it does, then the finding is due to be affirmed under the clear error review. This is true even in the absence of express findings. This Court, or the former Fifth Circuit, held in 1976 that even absent express findings of fact, the clear error standard still applies. And it went on to say in this case that even in the absence of express findings, the Court's task is to, quote, determine whether any reasonable view of the evidence supports the Court's ruling. That principle, from 1976 forward, applies in the sentencing context. We cited United States v. Baldwin in our brief that says if the record otherwise supports the Court's determination at sentencing, a failure to make specific findings will not require vacating the sentence. Now, here, it's important. Did the district court identify anywhere in the record who the co-conspirator was who possessed the gun? No, Your Honor. Here, the question is not were there facts found. We know that there were. There were two express findings. And this is in the PSR that Mr. Estrada possessed the gun, number one. That's a finding of fact, not of law. And number two, that that possession was in connection with the drug distribution offense. That, too, is a question of fact and not of law. The Court need look no further than United States v. James decided just last year where it repeated that both of those findings are findings of fact reviewed for clear error. So the question is not were fact findings made. But he objected to those. He objected to the enhancement, did he not? He objected to the two-level gun enhancement in his objection. And he denied that he possessed the firearm. He did not deny any of the facts in the PSR that were put in there. He proffered other facts, which he suggested would lead to a different inference. But you can't object to the gun enhancement if you possessed it personally. So an objection to the enhancement has to be an objection to the statement in the PSI that he possessed it personally. That's correct. Well, as I read the record, and I understand your position. It's a nuanced position about objecting to a legal application of a guideline and not to underlying historical facts. And I get that. But my point is you can't object to an enhancement and at the same time admit that you personally possessed a firearm because that's fatal to your position. So I'm not sure he admitted to having personally possessed a firearm. He couldn't have objected to the enhancement otherwise. And for me, that put the burden on you to explain why the gun enhancement was appropriate. Well, I certainly don't mean to suggest that he admitted he personally possessed the gun. I'm suggesting the district court made that finding. And if I can explain why. So the PSR comes out. Paragraph 24 says we're applying a two-level enhancement because a gun, quote, was possessed. He objected to that paragraph and that legal conclusion. And I'll take, Your Honor, your concern. Okay. Maybe that carries along an objection to the fact of possession. After that objection comes out, the government files a sentencing memorandum that makes a that outlines much more extensively what his contacts to that house were. And no fact in that was ever denied. And in fact, on appeal in the blue brief, they call what we filed in the sentencing memorandum an undisputed proffer. And from that, what we're suggesting is that evidence in the record after the objection initially and then no further objection to our additional proffer of evidence, that evidence was sufficient to justify a finding, a circumstantial finding of constructive possession of the gun. By whom? That he rented. Him. By Mr. Estrada personally. No, but there were no drugs. There was no direct evidence that drugs were sold in the residence, right? Drugs were not sold from there. Now, this house was for manufacturing and distributing methamphetamine. This was one of several houses that Mr. Estrada and his co-conspirators used for the, and he got a, he got an enhancement in this case for maintaining a house for the manufacturer of drugs. That's what was being, nobody was living at this house. There's no evidence anybody lived there. But it's the place where the liquid methamphetamine was converted to crystal meth and at which 190 kilograms were found. And there's ample evidence connecting them. I think the most damaging piece is that Mr. Estrada sold to the CI crystal meth, one kilogram, in a Ziploc bag that had handwriting on it. The Ziploc bags in which the 190 kilograms were found at this house we're talking about bore the same handwriting. That's a direct connection. Whether he wrote it or not, that it came from the same manufacturing ring. But this corpse cases have said over and over, and we cited them in our brief, that it's permissible for a fact finder to infer, circumstantially, from the fact that a person leases or resides at a house, that he controls the dominion and control over the house, can give rise to an inference that he exercises the power to control items found within the house. Sure, but here you have the fact that the gun was found three days after his arrest, right, and it was registered to a third person, not to anybody tied to the conspiracy. So what would happen if Mr. or Ms. Blackburn, I don't know if it's a man or a woman, Mr. Dodson said it's a woman, but I don't know offhand, had brought the gun to buy methamphetamine and forgotten the gun and left it at the house? Would he be responsible for it? I think that would weaken the inference if there were additional facts. No, no, no, those are the facts. Is he responsible? No, I'm saying if you added that fact, if you added the fact your honor posits, I think that would weaken the inference is what I'm suggesting. There is no inference. It's not his. He didn't possess it. No, none of the co-conspirators possessed it. A buyer possessed it. The buyer is not part of the conspiracy. A buyer-seller relationship is not part of the conspiracy. So if Ms. Blackburn went to the house to buy methamphetamine, had a gun on her, and then forgot the gun and left it at the house, and those were the facts, could he be held liable for the gun? If those were the only facts, probably. No, you can add the fact that he rented the house, that the house was used to produce liquid methamphetamine, crystal methamphetamine. You can keep everything else together. I'm adding that. I think that does not defeat the ability of a fact finder to infer that he controlled it, because it was in a space that he had the power to control, right? Even though it was found three days after his arrest? Yes, and for that proposition, I'd call your honors to the case of United States v. Folk, 754 F. 3rd, 905, 2014 decision of this court. That was a 922 G1 felon in possession case, in which the defendant was arrested and in jail on March the 23rd, and a week later on April 1st, a search warrant was executed at his house where the gun was found. He challenged his conviction on the sufficiency of the evidence ground, saying that he didn't knowingly possess the gun. This court affirmed and said that the evidence of constructive possession was sufficient, although he was currently incarcerated at the time the warrant was executed, and the reason was he still retained the power to control the disposition of the guns. Now, in that case, there were jail recordings where he was calling people saying, do this with the guns, but it's not the fact that he exercised the control. It's the fact that he still retained it because they were in a house that he had control. But that gun didn't belong to someone else, right? The guns... In the case you're citing? No, they didn't belong to someone else. That's a big difference, I think. The registration or not registration or whoever bought this or licensed this gun is really beside the point. The question is possession, and possession doesn't turn on ownership or registration or anything else. You think it's irrelevant? I don't think it's irrelevant, but I think it's not dispositive because the charge is not that a gun licensed to Mr. Estrada was found. It's that a gun was possessed. And so what I'm suggesting is... But it had to be possessed by somebody within the conspiracy, right? I disagree with that. And let me be clear. Maybe I have not been clear. You could have had a non-conspirator possess the gun and he's liable for it? Let's put the conspiracy to the side. We are not defending the application of the gun enhancement on the co-conspirator finding. We're asking the court to affirm on an alternative basis, consistent with the record, which is that Mr. Estrada could be said to have personally constructively possessed the gun. Okay, so to Judge Kidd's point earlier asking about the findings, if it were going to be on a theory of co-conspirator possession, that gets into relevant conduct principles about was it found while Mr. Estrada was a member of the conspiracy? Was it reasonably foreseeable? Was it in furtherance of the conspiracy? All of those additional things. We are not defending the application of the two-level enhancement on that theory. We are instead saying the district court made a discrete finding of fact of possession in connection with the crime. We're saying the evidence in the record bears that out through a permissible inference, which this court's cases say the reviewing court must infer was made because it is consistent with the ultimate ruling and it supports it. And so where that is true, what the in-bank decision of this court, I call it the money case, $242,484. What that in-bank decision says is, look, it's a common sense view. If we have a finding and there's an unstated implicit subsidiary finding that's necessary to that, we assume the district court made it because otherwise they wouldn't have made the finding. If the district court here could not have inferred circumstantially that he possessed the gun because it was in the home he rented, he would not have found that he possessed it, which is what the district court found. And so we assume... What about Mr. Dodson's argument that the district court went astray by relying on the application note where the language of the guideline itself is not ambiguous? We've taken the position that the application note has no bearing here because was possessed is unambiguous. And so we have asked the court to put to the side the application note because we're taking a view of the case that depends strictly on the words was possessed, that is consistent with the district court's finding that he did possess it, and on which there's no need to rely on the burden-shifting presence and clearly improbable language in the application note. And we think that approach to the guideline is consistent with Dupree and the way we're supposed to be doing interpretive questions on the guidelines now. And so if we are correct that the finding of possession and the finding of in connection with is borne out by the record based on facts that the district court's fact finder was free to infer, now it's not to say that other inferences weren't permissible. And we've cited the cases in our brief that say, look, if the state of the record gives rise to competing inferences, which I'm not disputing is possible here, but that's a task for the fact finder to make. And the district judge sitting as fact finder at sentencing is free to draw the inferences that he will, he or she will draw when they're supported by the record, which they are for all the reasons about Mr. Estrada's connection to the house. He negotiated the lease. He went to see the house. He signed the lease. He admitted this in the plea colloquy. He, quote, took possession of the house. He doesn't deny that. He says in the blue brief at page 30, he has a, quote, connection to the firearm because it was found in a house for which he co-signed a lease and found along with a large quantity of methamphetamine and materials related to the conspiracy he admitted to. So he's admitting this connection. And we think under the court's precedence, a fact finder facing that evidence with this rule of law could so find. And if that, if all of that is correct, for the reasons we've explained in our brief, that renders him ineligible for a two-level reduction for the zero-point offender provision because that language says you're not eligible if the defendant possessed a firearm in connection with the offense. And it's his burden, we pointed to the safety valve cases because this court doesn't have any published precedent on the zero-point offender provision, that the safety valve, materially identical languages, places the burden on the defendant to overcome the in connection with finding. And here, there was no effort made to do that. He could have said when the PSR came out. You agree that if we disagree with you in terms of the district courts finding your argument that the district could have found and that we should find that the district court found that the defendant constructively possessed the firearm, but instead we consider this under whether there's sufficiently established that a co-conspirator possessed the firearm. Do you agree that if we're proceeding under that the conspiracy part of it, that the district court erred in the zero-point offender decision? If the finding is purely that the co-conspirator possessed the gun and not Mr. Estrada, I agree. That would not render him ineligible for the zero-point offender reduction. Okay. If there are no further questions, we would ask that Mr. Estrada's sentences be affirmed. Thank you. Thank you very much. I want to first address the government's implicit finding argument. What this court's made clear in Hightower is that an implicit finding means a necessary finding. That's an unstated finding necessary to the court's stated reasoning. In all the cases that the government cites, none of them involve the court applying the wrong standard that would obviate the need to make that finding. And so that's why this court can't read an implicit finding into what the court did say. But the government proceeded below on a dual theory, right? The government's argument at the sentencing hearing was that the district court could find that the firearm enhancement applied either because of possession by Mr. Estrada right, actual or constructive, or by a co-conspirator, right? Correct. And it sort of said it doesn't matter if it's a co-conspirator, the defendant, either way, the enhancement should apply. But the record doesn't even necessarily speak to, you know, the court's example of a buyer was a good example. There's nothing that says the access to the house was limited to co-conspirators. And again, without knowing anything about the co-conspirators, there's just not any evidence of who had access to it. So why is the government wrong in saying that all of the evidence taken together allowed a reasonable fact finder to infer that he had constructive possession over the firearm? After all, it was a house that he leased or rented for the purpose or one of the purposes of manufacturing methamphetamine. And the gun was found there days after his arrest. With no one else there. So why isn't that enough? I think that the control of the premises often creates a permissible inference, but here it doesn't. We do know that other people were named on that lease and there was mail in other people's name in that house, but not in his name. Again, the fact that the gun was laying out and not put away, I think, suggests, and we just don't know, that perhaps it had been left there in a hurry and not by the defendant who was arrested in another house. I would just argue that the evidence is so weak in this case that it's a rare case where that inference is not reasonable. It's not reasonable to conclude the greater weight of the evidence, given everything we don't know about who had access to that house and what the defendant's relationship to that house was outside of negotiating the lease, that it became reasonable, maybe, to say not clearly improbable, but that doesn't get us to buy a preponderance. And again, I'd fall back on, even if that finding wouldn't be clearly erroneous, it's not the finding that the court made. And this court doesn't make findings on appeal based on the evidence. It can only rely on the findings, explicit or implicit, that the court made. And if there aren't any other questions, I'll rest. All right. Thank you both very much. All right, our next.